UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*,

         Debtor.

Case No. 6:07-bk-00761-ABB
Chapter 11
Jointly Administered

_____/

SONEET R. KAPILA, as CHAPTER 11
TRUSTEE for TRANS CONTINENTAL
AIRLINES, INC.,

         Plaintiff,

v.

MICHAEL FERDERIGOS,

         Defendant.

Adv. P. No. 6:09-ap-_____

_____/

**COMPLAINT TO AVOID AND RECOVER
FRAUDULENT TRANSFERS**

Plaintiff, Soneet R. Kapila, as the Chapter 11 Trustee ("Trustee" and/or "Plaintiff") for the bankruptcy estate Trans Continental Airlines, Inc. ("TCA" and/or the "Debtor") in Case No. 6:07-bk-00762-ABB, by and through his undersigned counsel, files his Complaint to Avoid and Recover Fraudulent Transfers against Michael Ferderigos ("Defendant"), and alleges as follows:

**NATURE OF ACTION**

1. This is an adversary proceeding seeking to avoid and recover actual and constructively fraudulent transfers made to Defendant pursuant to Sections 544, 548 and 550 of the Bankruptcy Code, Chapter 726, Florida Statutes, and Fed. R. Bankr. P. 7001.

{O1390187;1}         1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1334 and 157.

3. Venue is proper in this district under 28 U.S.C. § 1409.

4. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b) (2) (A), (B), and (H).

## PARTIES

5. Plaintiff is the court-appointed Chapter 11 Trustee for TCA's bankruptcy estate.

6. Defendant is an individual residing in Orlando, Florida.

7. Defendant improperly received funds traceable to investors of TCA, and the Trustee seeks to avoid these transfers under the Bankruptcy Code and the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, *et seq.* ("FUFTA").

## FACTUAL BACKGROUND

8. On March 1, 2007 (the "Petition Date"), Tatonka Capital Corporation, Integra Bank, National Association, American Bank of St. Paul, and First National Bank & Trust Company of Williston (collectively, the "Petitioning Creditors") filed against TCA an involuntary petition under Chapter 11 of the Bankruptcy Code.

9. On March 8, 2007, the Petitioning Creditors filed an emergency motion for appointment of a Chapter 11 trustee (Dkt. No. 5; the "Emergency Motion"). As set forth in the Emergency Motion, upon information and belief, TCA has been involved in

one of the largest "Ponzi" schemes in the State of Florida based on fraudulent investments offered in connection with TCA, among other things.

10. On March 16, 2007, this Court entered its Order Directing the Appointment of Chapter 11 Trustee (Dkt. No. 24).

11. On March 27, 2007, the United States Trustee filed its Notice of Appointment of Trustee (Dkt. No. 28), appointing Plaintiff as the Chapter 11 Trustee for TCA.

12. On March 30, 2007, this Court entered its Order Approving the Chapter 11 Trustee's appointment (Dkt. No. 31).

13. On April 5, 2007, this Court entered its Order for Relief for TCA (Dkt. No. 39; the "Order for Relief").

14. On July 31, 2007, this Court entered its Order pursuant to which the TCA bankruptcy case was jointly administered with the bankruptcy case of Louis J. Pearlman ("Pearlman") (Dkt. No. 170 in Case Number 6:07-bk-00762-ABB).

## THE EISA PROGRAM

15. From as early as 1989 through January 2007, TCA, by and through its president, Pearlman, and other persons at TCA, raised in excess of $300 million from hundreds of investors nationwide. TCA raised such funds by offering investors the "opportunity" to invest their funds into the "Employee Investment Savings Account" program allegedly maintained by TCA (the "EISA Program").

16. Upon information and belief, the EISA Program was touted by Pearlman and other persons at TCA as being available solely to employees of TCA and their family

{O1390187;1}                                      3

and friends. However, upon information and belief, the investors solicited by Pearlman and TCA were not, with a few exceptions, TCA employees or family members of TCA employees.

17. Upon information and belief, Pearlman and TCA promised prospective and existing investors in the EISA Program that their investments would yield "interest" at above-market interest rates because such monies were being invested through TCA, which was promoted as a financially strong and successful charter airline with a net worth of over $100 million. Upon information and belief, Pearlman and TCA represented to existing and prospective investors in the EISA Program that TCA had significant banking relationships which enabled TCA to achieve these higher than market rates of return on its investments, which higher rates of return could be passed on to the investors.

18. Upon information and belief, Pearlman and TCA made several representations to investors and prospective investors in the EISA Program concerning the safety of the investments, including, without limitation, that the funds (i) were secure and deposited into individual bank accounts with unique account numbers at United States financial institutions, (ii) were insured by the Federal Deposit Insurance Corporation, (iii) were re-insured by either Lloyds of London or AIG Insurance. Upon information and belief, at all relevant times herein, Pearlman, among others with TCA, knew that these representations were false and misleading and were intended to induce such investors into transferring their monies to TCA.

19. In actuality, the funds were not deposited into individual bank accounts for the investors with individual account numbers. Moreover, the funds did not have FDIC insurance protection and there was no re-insurance from Lloyds of London, AIG Insurance or any other insurance company. Further, the funds did not yield above-market interest rates.

20. Rather, the funds received from investors in the EISA Program were deposited into various bank accounts held in the name of TCA and thereafter disbursed to various parties as opposed to remaining on deposit for such investors.

21. Upon information and belief, certain of the funds transferred by investors into the EISA Program were used to repay prior investors and/or pay "interest" to prior investors in the EISA Program. Certain of the "interest" payments were paid in profits -- i.e., amounts in excess of the principal amount invested by the investors. The source of these "interest" payments was not from bona fide investments, but from investment funds received from other investors.

22. At Pearlman's plea hearing on March 4, 2008 before the United States District Court for the Middle District of Florida in criminal case, Case No. 6:07-CR-97-Orl-18DAB, Pearlman admitted that the EISA Program was a "Ponzi" scheme in that the money invested in the EISA Program was used to pay back earlier EISA Program investors.

23. Payments to the first investors began in or about 1989 and ended in or about December of 2006.

24. All payments were made by check or wire transfer from TCA's bank accounts at various financial institutions. Each check was made payable to the investor by name.

25. Investors received from TCA quarterly statements which detailed the status of their investments for the previous three months, including the amount of "interest" earned.

26. As reflected in **Exhibit A,** which is attached and incorporated herein, within four years preceding the Petition Date, TCA paid Defendant the sum of $22,000.00 (collectively, the "Four Year Payments").

## COUNT I
## ACTUAL FRAUD – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS RECEIVED BY DEFENDANT UNDER 11 U.S.C. §§ 544(b)(1) AND 550 AND FLA. STAT. §§ 726.105(1)(a) AND 726.108

27. Paragraphs 1 through 26 inclusive are realleged and incorporated herein by reference.

28. This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 550, and FUFTA.

29. Within four years prior to the Petition Date, TCA transferred the Four Year Payments to Defendant or for the benefit of Defendant.

30. Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of TCA in property transferred to Defendant that is voidable under applicable law (in this case under Fla. Stat. §§ 726.105(1)(a) and 726.108) by a creditor holding an unsecured claim.

31.  The Four Year Payments were made by TCA with the actual intent to hinder, delay or defraud present and future creditors of TCA.

32.  There is at least one actual holder of an allowed unsecured claim pursuant to 11 U.S.C. § 502, who would have standing to assert a claim for relief under FUFTA.

33.  Creditors have filed claims against TCA, whose claims arose before or after the Four Year Payments were made.

34.  The Four Year Payments are avoidable, and should be avoided, pursuant to and under Fla. Stat. § 726.105(1)(a) and 726.108 and 11 U.S.C. § 544(b)(1).

35.  Pursuant to 11 U.S.C. § 550(a), the recovery of property for the benefit of TCA's estate is authorized to the extent that the Four Year Payments are avoided under 11 U.S.C. § 544(b)(1) and FUFTA.

**WHEREFORE,** the Trustee demands judgment against Defendant as follows: (i) determining that the Four Year Payments were fraudulent and avoidable under 11 U.S.C. §§ 544(b) and 550 and FUFTA; (ii) avoiding the Four Year Payments and entering judgment in favor of the Trustee against Defendant for the value of the Four Year Payments, plus pre-judgment interest, post-judgment interest, and costs of suit; (iii) disallowing any claim that Defendant may have against TCA, or any debtor jointly administered with TCA, including, without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (iv) for such other and further relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

The Trustee reserves the right to amend this Complaint to add additional claims that the Trustee may discover.

Dated: March 31, 2009

**AKERMAN SENTERFITT**

/s/ Denise D. Dell-Powell
Denise D. Dell-Powell, Esquire
Fla. Bar No. 0890472
Jill E. Kelso, Esquire
Fla. Bar No. 0578541
420 S. Orange Ave., Suite 1200
Post Office Box 231
Orlando, Florida 32802
Telephone: (407) 423-4000
Facsimile: (407) 843-6610
Email: Denise.DellPowell@akerman.com
         Jill.Kelso@akerman.com

and

Michael I. Goldberg, Esquire
Florida Bar No.: 886602
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301-2229
Phone: (954) 463-2700
Fax: (954) 463-2224
E-mail: Michael.Goldberg@akerman.com

**ATTORNEYS FOR PLAINTIFF**

# Louis J. Pearlman
Case No. 6:07-bk-00761-ABB
United States Bankruptcy Court
Middle District of Florida
Orlando Division

## EISA Investor - Michael Ferderigos - 4 Year

| Transaction Date | Client ID | Transaction Type | Bank Acct. | Check Date | Check No. | Withdrawals |
|---|---|---|---|---|---|---|
| 05/15/03 | 11 | Withdrawal | FNB-3122 | 05/19/03 | 12606 | $1,000.00 |
| 08/06/03 | 11 | Withdrawal | FNB-3122 | 08/07/03 | 12940 | 2,000.00 |
| 09/26/03 | 11 | Withdrawal | FNB-3122 | 09/29/03 | 13085 | 2,000.00 |
| 07/19/04 | 11 | Withdrawal | FNB-3122 | 07/21/04 | 15822 | 8,000.00 |
| 08/04/04 | 11 | Withdrawal | FNB-3122 | 08/06/04 | 15961 | 1,000.00 |
| 11/16/04 | 11 | Withdrawal | FNB-3122 | 11/17/04 | 16690 | 2,000.00 |
| 11/24/04 | 11 | Withdrawal | FNB-3122 | 11/26/04 | 16720 | 3,000.00 |
| 12/22/04 | 11 | Withdrawal | FNB-3122 | 01/07/05 | 16949 | 3,000.00 |
| | | | | | | $22,000.00 |

EXHIBIT A